van Gestel, Allan, J.
This matter is before the Court on Plaintiffs’ Motion to Compel Production of Documents and for Entry of Protective Order, Paper #43. The motion is opposed with some vigor.

BACKGROUND

In the underlying Complaint the plaintiffs, NPS LLC and the New England Patriots, L.P. (collectively, the “Patriots”), among other things, have alleged that certain of the defendants, identified at this time only as “John Does 1-50,” engaged in the unlicensed resale of tickets to Patriots’ home football games, facilitated by the defendant StubHub, Inc. (“StubHub”). The Patriots also contend that StubHub’s various activities induced individuals to sell their Patriots tickets in violation of Patriots’ policies.
StubHub, as a plaintiff-in-counterclaim, argues: that there is a cognizable “relevant product market” for the resale of tickets; that possession of a lawful monopoly in one market confers no right to use the control of that market to eliminate competition in an adjacent market; that a refusal to honor tickets that eliminates competition in a relevant market is unlawful; and that a competitor has clear standing to challenge its rival’s refusal to deal with customers who do business with it.
The present motion by the Patriots seeks to compel StubHub to produce documents that identify individuals who purchased or sold, or who offered to purchase or sell, tickets to Patriots’ home football games using the StubHub website. The Patriots also ask that the Court enter a proposed protective order in connection with the ongoing discovery.
StubHub refuses to produce the names of the ticket buyers and sellers unless there is first in place a protective order that limits the Patriots’ use of the customer names solely for purposes of this litigation and for no other reason.
The Patriots have said that they intend to use the identities of the purchasers and sellers, not only for this case, but also for its own other allegedly legitimate uses such as cancelling season tickets of “violators” or reporting to authorities those customers that they deem to be in violation of the Massachusetts anti-scalping law.

DISCUSSION

While each side has flooded the Court with citations to numerous cases relating to the Court’s authority, obligations and the extent of its discretion in discovery matters, one case stands out for particular attention. That case is Herman v. Admit One Ticket Agency, Supreme Judicial Court for Suffolk County, No. SJ-2007-0216 (May 16, 2007). In Admit One, Justice Cowin, sitting as a Single Justice of the SJC, issued a Memorandum and Order on an emergency petition by Admit One Ticket Agency (“Admit One”) for relief from a Quincy District Court judge’s order denying its motion for a protective order.
In Admit One, the District Court had ordered Admit One to produce publicly the identity of the source of *718 the tickets that it resells. Admit One had not refused to disclose such information to the plaintiff, but sought by means of a protective order to prevent the use of the information outside the litigation. The District Court judge refused to enter a protective order on the ground that such an order would be an improper “prior restraint of free speech.”
Justice Cowin quickly swept aside the First Amendment and Art. 16 of the Declaration of Rights contentions, noting that the “First Amendment was designed to prevent government interference with speech; it is not a means of compelling those who do not wish to speak to do so.” Mem. p. 4. She then focused her attention on the discoveiy issues themselves.
Finding the District Court judge’s action in denying Admit One’s motion for a protective order to be an abuse of discretion, Mem. p. 3, Justice Cowin vacated the order of the District Court and “directed [him] to enter an order allowing [Admit One’s] motion for protective order that requires the plaintiff to keep confidential [Admit One’s] ticket source and to use the information only for purposes of the present case.” Mem. p. 7. Justice Cowin stated specifically that “[discovery is limited to the plaintiffs legitimate litigation needs in the particular case.” Mem. pp. 6-7.
To what extent, if at all, is Admit One binding on this Court for purposes of this case? Certainly it is entitled to significant deference. When a Justice of a higher court speaks on a subject, a Justice on a lower court must listen and rule responsibly.
Factually, however, there is a difference between Admit One and this case that is of significance. In Admit One the plaintiff was a potential Red Sox ticket purchaser claiming that he was quoted “grossly excessive prices” in violation of G.L.c. 93A and c. 140, sec. 185D (the anti-scalping law). The Admit One plaintiff sought the identity of Admit One’s sources because “he may want to report all this to the Department of Public Safety which enforces the anti-scalping statute.” Mem. p. 3. He also stated that the information is necessary to determine whether the source is licensed properly, because such information may also “need [ ] to be reported to the Department of Public Safety” and finally, he claimed that “the public has a right to know.” Id.
In the present case, the Patriots point out that the use of their tickets, by their customers, is limited to permitting those customers to come onto the private property at Gillette Stadium and watch the Patriots’ team play football. The Patriots argue that they have a right to regulate that activity, quite unlike the interest of the plaintiff in Admit One whose claim is based solely on his interest as a potential ticket buyer. Further, the Patriots point out that the tickets to their games, being sold through StubHub, are tickets already acquired from the Patriots, primarily from holders of coveted season tickets. All they seek, say the Patriots, is the names of their own customers who are violating the limitations on re-sale of their tickets.
This Court concludes that the Patriots are in a different position than that of the plaintiff in Admit One. The Patriots have legitimate needs that were not possessed by the plaintiff in Admit One. This Court finds that those differences carry the day.
[D]iscoveiy is not limited to issues raised by the pleadings, for discoveiy itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.
Cronin v. Strayer, 392 Mass. 525, 534 (1984).
“[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed.” Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc., 730 F.Sup. 1165, 1186 (D.Mass. 1990). StubHub has not met its burden here. The Patriots are entitled to the discoveiy they seek.
Thus, the issue that remains is not whether it would be an abuse of discretion to order the production sought without a protective order — as Justice Cowin so clearly ruled in Admit One — but rather what should be the extent of the limits imposed on the use of the information produced.
This Court concludes that the Patriots, having legitimate interests in knowing the identity of the purchasers of Patriots’ tickets from the Patriots who then re-sell the same through StubHub, should not be prohibited from using the information gained for reasons beyond the mere prosecution of this litigation. Indeed, one of the legitimate reasons for seeking the present information directly relates to the further prosecution of this case. This is to learn the identity of the defendants currently identified only as “John Does 1-50.” See, e.g., Essex Wire Corp. v. Eastern Elec. Sales Co., 48 F.R.D. 308, 311 (E.D.Pa. 1969).
The Patriots have attached as Exhibit A to its motion a form of Protective Order that this Court finds satisfactory under the circumstances.

ORDER

For the foregoing reasons, the Plaintiffs’ Motion to Compel Production of Documents and for Entry of Protective Order, Paper #43, is hereby ALLOWED. The documents sought shall be produced forthwith, subject to the Protective Order attached as Exhibit A to the motion to compel.